UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT FLORES,

        Plaintiff,

v.                                                  Case No. 06-C-3

DETECTIVE SCOTT LANG, et al,

        Defendants.

---

**DECISION AND ORDER**

---

On January 3, 2006, Plaintiff Robert Flores, a state prisoner presently serving a sentence for two counts of felony murder, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against several of the detectives from the Milwaukee Police Department involved in the investigation of his crimes. On August 1, 2006, Flores filed a motion for leave to file an amended complaint adding additional members of the Milwaukee Police Department as defendants, including the Chief, as well as two additional claims. Defendants opposed Flores' motion to amend his complaint and, in the meantime, have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or (c)[1] on the ground that Flores' claims are barred under the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). Defendants also argue Flores' claims are barred under the doctrine of claim preclusion.

Flores' motion for leave to file an amended complaint will be granted. Under Fed. R. Civ. P. 15(a), leave to amend is to "be freely given when justice so requires." Flores states that he did

---

[1] In support of their motion, defendants have supplemented the record with documents from Flores' criminal case, Milwaukee Circuit Court Case No. 2001-CF-001101, thereby converting their motion to one seeking summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(b).

not discover the identities of the additional defendants until he received discovery from defendants on July 12, 2006. He promptly prepared an amended complaint and sought leave to file it. Although defendants complain that the proposed amended complaint contains new claims that they have insufficient time to address before the dispositive motion deadline (Defs.' Br. In Supp. of Mot. to Dismiss at 3 n.1), this is not the kind of prejudice that warrants denial of a motion to amend. If necessary, a new dispositive motion date can be set. Given Flores' status as a *pro se* prisoner and the recent receipt of discovery, I conclude that justice requires that his motion be granted.

Although the amended complaint was not the operative one when defendants filed their motion to dismiss, I will nevertheless proceed to decide the motion at this time since the amendment does not affect the primary ground upon which dismissal is sought. Because I conclude that *Heck v. Humphrey* does not bar Flores' action and that the record, as it now stands, does not show that the issues underlying his claims were previously litigated, the motion to dismiss will be denied.

**BACKGROUND**

Flores claims that Detectives Scott Lange, Al Morales, David Klabunde, Alfredo Gutierrez, Kurt Sutter, and Officers Terry Trevarthen and Gilbert Collado, all of the Milwaukee Police Department, violated his rights under the Fourth Amendment to the United States Constitution when they (1) entered his home without a warrant; (2) arrested him without probable cause; (3) intentionally omitted exculpatory information from the probable cause report that was submitted to the judge to continue his detention; and (4) confined him for an unreasonable amount of time under harsh conditions before charging him and bringing him before a magistrate. (Am. Compl. at 5-6.) For his claim against Chief Hagarty, Flores alleges that the Milwaukee Police Department

2

has a *de facto* unwritten policy of allowing police officers to make warrantless arrests of suspects in their homes on suspicion of any crime involving a firearm. (*Id.* at 7.)

According to the amended complaint, the defendants arrested Flores based on information obtained during a series of interviews of Roberto Velez, who was being questioned about a series of burglaries and armed robberies--one in which a young couple were killed-- that had occurred in the City of Milwaukee in late 2000 and early 2001. Velez identified Flores as a participant in two robberies, one of which had occurred at 2237 West Orchard Street and the other at 1515 West National Avenue. Flores alleges that a polygraph was administered to Velez to determine whether he was being truthful in the information he was providing. He further alleges that the polygraph indicated that Velez was lying when he claimed that Flores was with him at the two robberies and that the detectives' own investigation failed to corroborate Velez' account. (*Id.* ¶ 1-5, 8.)

Despite this fact, Flores claims the defendants entered his home without either consent or a warrant and arrested him on the basis of the information provided by Velez. Thereafter, the defendants obtained authorization to continue Flores' detention by submitting a probable cause report to a judge that contained the incriminating Velez statements, but omitted the facts that he had failed a polygraph examination and that their own investigation resulted in information that was inconsistent with Velez' account. Flores claims that because Velez failed the polygraph examination and the information he provided was inconsistent with the detectives' investigation, there was no probable cause for his arrest. Thus, he claims, his initial arrest and continued detention were in violation of his rights under the Fourth Amendment, for which he now seeks declaratory relief and both compensatory and punitive damages relating solely to his allegedly unlawful arrest and detention. (*Id.* ¶¶ 9-11.)

3

The record in his criminal case reveals that Flores was arrested on Friday, February 23, 2001, at approximately 10:05 a.m. (Defs.' Proposed Findings of Fact (DPFOF) ¶ 11.) He was placed in a cell at the police administration building and held there until 6:35 p.m. From 7:00 p.m. until 11:40 p.m. that night, Flores was interviewed by homicide detectives in an interrogation room, but denied any knowledge of the crimes they were investigating. He was then returned to his cell located one floor above the Criminal Investigation Bureau. (DPFOF ¶¶ 11-14.) Flores was returned to the interrogation room at 3:15 in the early morning hours of Saturday, February 24, and remained there until 5:35 a.m. while a detective reviewed the file. He was taken back to his cell in the police administration building without being questioned after he told the detectives he was too tired to be interviewed. (DPFOF ¶ 17.) Later that day, between 6:13 p.m. and 8:33 p.m., Flores was shown in line-ups relating to the two robberies for which he had been arrested. Although Flores was not identified as a participant in either crime, detectives resumed interrogating him between 10:54 p.m. on February 24 and continued until 12:09 a.m. on Sunday, February 25 regarding those robberies, as well as the double homicide involving the young couple that had occurred at 2130 South Muskego Avenue. Although Flores had not been identified in connection with the double homicide, police suspected that it was linked to the Orchard Street robbery because a bullet found there matched one found at the homicide scene. (DPFOF ¶¶ 18-23.)

During this time, police were also interrogating Miguel Hirecheta concerning some or all of the same crimes. Hirecheta apparently told detectives that Flores was the person who shot and killed two people on South Muskego Avenue. At 2:13 a.m. on Februray 25, Flores was brought back to the interrogation room and confronted with Hirecheta's statement. At that point, Flores confessed to his involvement in an attempted robbery at the South Muskego address, but claimed

4

that his accomplices had shot the couple. Flores also confessed to two other burglaries police were investigating, one on West Lapham Boulevard and another on East Capitol Drive. The interview ended at 9:56 a.m. on Sunday, February 25, 2001. Later that day, Flores showed the detectives the location where pieces of the firearm used in the double homicide had been dropped from a bridge. With Flores' consent, detectives also retrieved from his home a VCR taken from the residence on South Muskego where the double homicide had taken place. (DPFOF ¶¶ 25-29.)

As noted, Flores was not taken before a judge following his arrest on Friday, February 23. Instead, Detective Kurt Sutter signed a probable cause report concerning Flores' arrest that was apparently faxed to the judge on duty on Saturday, February 24. (Aff. of Miriam R. Horwitz, Ex. D.) The report briefly recounted the facts of the National Avenue and Orchard Street robberies, and then stated:

> Detectives had occasion to interview Roberto Velez, H/M, 1-28-78 who admitted to his involvement in 1515 West National. He named Flores as the co-actor in the offense and West Orchard.

(*Id.*) At 1:15 p.m. on February 24, 2001, Milwaukee County Circuit Court Judge Joseph Donald signed the report indicating a finding of probable cause and directing that Flores be held in custody pending further proceedings. (*Id.*) On February 28, 2001, a criminal complaint was filed charging Flores with two counts of felony murder based on the double homicide at the South Muskego address and the two burglaries to which he had confessed.[2] (Horwitz Aff., Exs. A and B.) On March 1, 2001, he was brought before a judge for his initial appearance on the charges. (Horwitz

---

[2]The State never pursued charges against Flores for the Orchard Street and National Avenue robberies on which he was arrested. (Horwitz Aff., Ex. F. at 3, n.3.)

5

Aff., Ex. A.) The record does not disclose whether Flores had been brought before a judge on any previous occasion since his arrest some six days earlier.

Flores initially agreed to cooperate with the prosecutor and testify against his co-defendants. (Horwitz Aff., Ex. H at 74-76.) In fact, he followed through on this agreement by testifying against one of his co-defendants (the other pled guilty) both at a preliminary hearing and at trial. Flores decided to change tactics, however, when he became dissatisfied with the prosecutor's plea offer. (*Id.* at 201-06.) Represented by new counsel, Flores moved to suppress his confession and the testimony he had given against his co-defendant on the grounds that the detectives had failed to administer *Miranda* warnings and that his confession was the product of police coercion. (*Id.* at 4-5.) The confession, he claimed, was "fruit of the poisonous tree" and must be suppressed under *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

Flores' motion to suppress was denied following an evidentiary hearing at which the trial court found that *Miranda* warnings had been given and the confession was voluntary. (*Id.* at 288-89.) Flores then pleaded "no contest" to the felony murder counts as a party to the crime, in return for which two related burglary counts were read in and dismissed. On February 1, 2001, Flores was sentenced to twenty-five years with an initial confinement term of thirteen years, to be followed by twenty years of probation. (Horwitz Aff., Ex. C.)

On August 19, 2003, Flores filed a motion for post-conviction relief in which for the first time he challenged his initial arrest and detention based on allegations, some of which are the same as, or similar to, those he makes here. Flores claimed that he was entitled to withdraw his pleas because the police arrested him without probable cause and that, to continue his detention, they filed a report that failed to disclose the fact that the information upon which they based their arrest was

6

provided by a witness who had failed a polygraph test, in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). Flores also claimed that he was held for more than forty-eight hours without a hearing before a judge in violation of the rule announced in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). As a result, Flores claimed his detention was illegal and his confession should have been suppressed, along with the other evidence derived from it. (Horwitz Aff., Ex. D.)

The trial court held that by his no contest pleas, Flores had waived his right to directly challenge his arrest or detention, but nevertheless found it necessary to address the claims because Flores had also asserted a claim of ineffective assistance of counsel based on his trial attorney's failure to raise the issues before advising him to plead no contest. The court then proceeded to analyze Flores' ineffective assistance of counsel claim under the familiar two-prong test adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to establish ineffective assistance of counsel under *Strickland,* a defendant must show (1) his counsel's performance was deficient; and (2) the deficient performance was prejudicial. *Id.* at 687. In applying the two-prong *Stickland* test to Flores' claim, the court concluded without an evidentiary hearing that neither prong was satisfied. With respect to the first prong, the court held that a reasonably effective trial counsel would not have challenged Flores' detention based on the omission of the polygraph results. And as to prejudice, the court concluded that even if counsel had challenged Flores' arrest and detention, he would not have been successful because the polygraph examiner's opinion was unclear as to which statements, or portions of statements, Velez had given in the course of six separate interviews were untruthful. Finally, the court noted that the probable cause showing was also based on an additional crime to which the omitted material did not directly pertain. As to the claim that his rights under *Riverside* were violated because he had not been

7

brought before a judge within forty-eight hours, the trial court stated that *Riverside* required only that a probable cause determination be made by a judge or magistrate within forty-eight hours of an individual's arrest. It did not require that the individual be brought before the judge or magistrate within such time. The court therefore denied Flores' post-conviction motion. (Horwitz Aff., Ex. E.)

Flores appealed his conviction and the order denying his motion for post-conviction relief to the Wisconsin Court of Appeals. Like the trial court, the Court of Appeals concluded that Flores had waived his right to directly challenge his arrest and detention by his no contest pleas, but proceeded to consider his claims in the context of whether his trial counsel was ineffective in failing to assert them. In affirming the trial court's order and judgment, the Court of Appeals, in an unpublished opinion, first held that the conclusory allegations in Flores' motion for post-conviction relief were insufficient to warrant a hearing on most of Flores' claims. (Horwitz Aff., Ex. F. at 9-10.) The court found, however, that Flores' *Franks* claim that police had violated his rights by failing to disclose the results of Velez' polygraph examination merited further consideration. Ultimately the Court of Appeals affirmed the circuit court's finding as to that claim as well, stating:

> First, the question of the veracity of Velez's account of his involvement in the Orchard Street robbery is an issue of credibility alone, not governed by the *Franks* rule. Second, as observed by the trial court, "In the complicated context of the many Velez interviews, both before and after the polygraph, the examiner's opinion was not a critical fact capable of only one meaning." Third, a circumstance of equal significance is the fact that the probable cause showing related to an additional crime, i.e., the National Avenue robbery to which the omitted material did not relate. From this review of the record, we conclude the trial court properly exercised its discretion when it ruled that Flores's postconviction motion did not show that trial counsel performed deficiently in failing to bring a *Franks v. Delaware* challenge.

(*Id.* at 12-13.)

8

Flores filed a petition for review with the Wisconsin Supreme Court, which was denied on December 14, 2005. (Horwitz Aff., Ex. G.) On January 3, 2006, less than a month later, he commenced this action.

**ANALYSIS**

**1. Heck v. Humphrey**

Defendants first contend that Flores' action is barred by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a person convicted of a crime has no claim for relief under § 1983 if granting such relief would necessarily imply the invalidity of the underlying conviction unless the conviction has been reversed or otherwise set aside. 512 U.S. at 486-87. The rule operates as follows:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487. Defendants contend that this rule is applicable here because the facts alleged in Flores' complaint, if true, would necessarily imply the invalidity of his conviction. The invalidity of his conviction is implied, they contend, because if, as Flores alleges in his complaint, his arrest and detention were unlawful, then his confession and all of the evidence derived from it should have been suppressed under *Brown v. Illinois*, 422 U.S. 590 (1975). And "[s]ince the confession was the primary basis for Mr. Flores' entering a no contest plea, a finding that the arrest was unlawful would

9

necessarily imply the invalidity of the conviction." (Defs.' Br. in Supp. of Mot. to Dismiss at 14.) It therefore follows, defendants contend, that Flores' suit is barred by *Heck*.

But as defendants acknowledge, *Heck* was not intended to bar all § 1983 actions against the police by persons convicted of a crime. The action is not barred if the relief sought does not "necessarily imply the invalidity of the conviction or sentence." *Heck*, 512 U.S. at 487. In describing the kind of case that was not barred, the Court noted:

> a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery. . . and especially harmless error, . . . . such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

*Id.* at 487 n.7 (internal citations omitted).

Based on its own reading of *Heck*, the Seventh Circuit seemingly adopted a categorical approach, holding that claims of unlawful searches or arrests do not imply the invalidity of an underlying conviction and thus can always go forward, as opposed to undertaking a case-by-case analysis of the claim. *Copus v. City of Edgerton*, 151 F.3d 646, 648 (7th Cir. 1998); *see also Antonelli v. Foster*, 104 F.3d 899, 901 (7th Cir.1997) (noting principle of *Heck* was inapplicable to claim of unconstitutional arrest without a warrant). The Seventh Circuit briefly retreated from its categorical approach in *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003) (holding that under some circumstances *Heck* can bar claim for false arrest), but returned to it in *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006) (overruling *Gauger*). As *Wallace* points out, the circuits are almost evenly divided on the issue. *Id.* at 428-29.

Regardless of which approach is followed here, however, it is clear that Flores' claims are not barred by *Heck*. Under the categorical approach, of course, claims of unlawful arrest are never

10

Case 1:06-cv-00003-WCG    Filed 12/14/06    Page 10 of 19    Document 45

barred unless a lawful arrest is an element of the offense. *See Heck*, 512 U.S. at 486 n.6. But even under the case-by-case approach favored in some circuits, Flores' case would be allowed to proceed since it is clear from the facts of the case that his claims do not necessarily imply the invalidity of his conviction. This is so because there was other evidence sufficient to support his conviction even if his confession had been suppressed. In particular, it appears that Flores' own testimony at the preliminary hearing and trial of his co-defendant would be sufficient. (Supp. Aff. of Miriam K. Horwitz, Ex. K.) Defendants argue that, if his arrest and detention were unlawful, Flores' subsequent testimony also would have been excluded as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). However, it is far more likely that Flores' testimony, coming as it did in open court months later and after consultation with counsel, would have been found sufficiently attenuated so as to be admissible regardless of the legality of his arrest and detention. *See Brown v. Illinois*, 422 U.S. at 603-04 (holding that in determining whether illegal arrest requires suppression of subsequent statement, court must consider such factors as the temporal proximity of the arrest, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct). I therefore conclude that Flores' claims are not barred by *Heck.*

**2. Issue Preclusion**

In the alternative, defendants contend that Flores' claims are barred under the doctrines of *res judicata* or collateral estoppel.[3] Though closely related, these two doctrines are not identical.

---

[3] Although defendants did not raise either doctrine in their answer or their motion to dismiss, I do not regard this as fatal. *See Carter v. United States,* 333 F.3d 791, 796 (7th Cir. 2003) ("The failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it."). Here, Flores was not only aware of the issue, but raised it in his response to defendants' motion to dismiss. Defendants have now asserted it in their reply, and both parties have fully addressed it.

<mark>11</mark>

Under *res judicata*, also referred to as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Under collateral estoppel, which is also called issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* In *Allen*, the Supreme Court held that these doctrines are generally applicable to § 1983 actions consistent with the law of the state in which the action arises. *Id.* at 104-05. Defendants argue that under Wisconsin law, Flores' claims are barred since he already litigated them in the criminal proceeding against him.

Although defendants argue that Flores' civil rights claims are barred under either the doctrine of *res judicata* or claim preclusion (Defs.' Reply Br. at 3-4), the question presented is actually one of issue preclusion. The claims in Flores' § 1983 action were not decided in the criminal proceeding, since civil claims cannot be asserted in a criminal proceeding. But Flores' civil rights claims may be precluded if the issues upon which those claims are based were decided against him in the state court proceedings. The issue before me is whether, under Wisconsin law, Flores is barred from relitigating the issues underlying his civil rights claims here.

Under Wisconsin law, issue preclusion bars a party to a prior proceeding from relitigating an issue that was "litigated, determined and necessary to the decision in the prior proceeding." *Guenther v. Holmgreen*, 738 F.2d 879, 884 (1984) *(*quoting *Reckner v. Reckner*, 314 N.W.2d 159, 165 (Wis. App. 1981)). Complete identity of the parties in the prior and current suits is not required; it is enough that the party against whom the defense is asserted was a party. *Crowall v. Heritage Mutual Insurance*, 346 N.W.2d 327, 330 (Wis.App.1984). In *Michelle T. v. Crozier*, 495 N.W.2d 327, 330 (Wis. 1993), the Wisconsin Supreme Court recognized that the "[f]ormalistic

12

requirements" of the doctrine had "gradually been abandoned in favor of a looser, equities-based interpretation of the doctrine." This approach seeks to "balance competing goals of judicial efficiency and finality, protection against repetitious or harassing litigation, and the right to litigate one's claims before a jury. . . ." *Id.* It looks primarily at whether application of the doctrine would be fair to the party against whom it is applied. *Id*. at 332. Under the approach adopted by the Wisconsin Supreme Court in *Michelle T.*, the determination of whether a prior adjudication precludes an issue for determination in a second forum "is dependent upon conformance with principles of fundamental fairness. . . ." *Id.* at 335. Such determination "is a matter of discretion to be determined by the trial judge on a case-by-case basis." *Id.* The factors to be considered by the court in making such a determination include:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.* at 330-32; *see also In re Sorenson*, 646 N.W.2d 354, 361 (Wis. 2002).

But while the Wisconsin Supreme Court has adopted a more flexible approach toward the application of the doctrine of issue preclusion, there is no indication that it has abandoned the requirement that the issue must have been previously "litigated, determined and necessary to the prior proceeding." *Reckner*, 314 N.W.2d at 165; *see also Michelle T.*, 495 N.W.2d at 329. This is

13

also the position of the Restatement,[4] which the Wisconsin Supreme Court has consistently cited with approval. *Id.* at n.2; *Sorenson*, 646 N.W.2d at 361. In addition, the United States Supreme Court has held that "even when issues have been raised, argued, and decided in a prior proceeding, and are therefore preclusive under state law, '[r]edetermination of the issues [may nevertheless be] warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.'" *Haring v. Prosise*, 462 U.S. 306, 317-18 (1983) (quoting *Montana v. United States*, 440 U.S. 147, 164, n.11 (1979)). On the other hand, except when ruling on petitions by state prisoners for federal *habeas corpus*, it is not the role of lower federal courts to review state court decisions. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

Flores argues that his claims are not precluded because the state courts held that he had waived his Fourth Amendment claims and addressed them only in the context of an ineffective assistance claim. Thus, he argues the issues underlying his claims were never determined in the state court proceedings or, alternatively, that he was never given a full and fair opportunity to litigate them. (Pl.'s Br. in Opp. at 5.) But the fact that the state courts addressed the issues in the context of Flores' Sixth Amendment claim of ineffective assistance of counsel does not mean that the issues on which the defendants seek to bar relitigation were not addressed. The question is not the context in which the issues were decided, but whether they were decided at all.

---

[4]Restatement (Second) Judgments, § 27 provides:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

14

It is clear that three of the issues underlying the claims asserted by Flores in his amended complaint were not previously decided in the state court proceedings. In his Third Cause of Action, Flores alleges that the defendants violated his Fourth Amendment rights when they entered his home to make a warrantless arrest without exigent circumstances and without consent. Neither Flores nor his attorney moved to suppress his confession on the ground that police had effected an illegal arrest by entering his home without a warrant and without consent. Thus, the state courts had no occasion to rule on the issue, and Flores is not barred from litigating it in this action. It follows that the Fifth Cause of Action in which Flores alleges that the Milwaukee Police Department is operating under a *de facto* unwritten policy of having police officers make warrantless arrests of persons suspected of offenses involving firearms in their homes may also go forward. That issue, also, was not raised in the state court proceedings.

With respect to the Fourth Cause of Action, Flores alleges that the defendants violated his Fourteenth Amendment rights "when they held him for an unreasonable amount of time in harsh conditions of confinement before charging him and bringing him before a magistrate." (Am. Compl. at 6.) Although Flores claimed in the state court proceedings that police violated his Fourth Amendment rights under *County of Riverside v. McLaughlin* by failing to take him before a judge within 48 hours, that does not appear to be the issue he raises here. *Riverside* deals with the Fourth Amendment, which governs the period of time between an arrest without a warrant and when a judicial determination of probable cause is made. *Armstrong v. Squadrito*, 152 F.3d 564, 569 (7th Cir. 1998). It is the Due Process Clause of the Fourteenth Amendment, however, that "regulates the period of confinement after the initial determination of probable cause." *Id.* (quoting *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992)). The Due Process Clause also governs the conditions under which pretrial detainees are held. *Duran v. Elrod*, 542 F.2d 998, 999-1000 (7th Cir. 1976).

15

Thus, to the extent Flores' Fourth Cause of Action challenges the delay in taking him before a judge after the judicial determination of probable cause was made and the conditions of his confinement during that period of time, it is not barred by the prior state court proceedings.[5]

The question is closer, however, with respect to Flores' First and Second Causes of Action. The First Cause of Action alleges that the defendants violated Flores' Fourth Amendment rights "when they knowingly and intentionally, or with reckless disregard for the truth, failed to include material and crucial information of Velez' failed polygraph examination and discredited information in their probable cause detention affidavit/report to the judge." (Am. Compl. at 5-6.) The Second Cause of Action alleges that the defendants violated Flores' Fourth Amendment rights when they arrested him without probable cause. In his state court proceedings, Flores claimed that his arrest and continued detention were unlawful because the individual who provided the information upon which the determination of probable cause was based had failed a polygraph examination. Both the state trial court and the court of appeals decided the issue against him. The trial court found that the polygraph results that were not disclosed in the probable cause report would not have precluded a finding of probable cause because the results were equivocal and because they did not pertain to the National Avenue robbery, which also formed the basis for Flores' arrest. The Court of Appeals agreed and, as an added reason, noted that "the question of the veracity of Velez' account of his involvement in the Orchard Street robbery is an issue of credibility alone, not governed by the

---

[5]On the other hand, Flores also cites *Gerstein v. Pugh*, 420 U.S. 103 (1975), as support for his Fourth Cause of Action. (Am. Compl. at 6.) *Gerstein* is the seminal case that established the right of an individual arrested without a warrant to a prompt judicial determination of probable cause under the Fourth Amendment, which is made applicable to the states through the Fourteenth Amendment. Flores' citation to *Gerstein* suggests that he may also intend to challenge the delay in obtaining a judicial determination of probable cause following his arrest. However, his amended complaint alleges no facts in support of such a claim, and I therefore conclude no such claim is stated.

16

*Franks* rule."[6] If the sole basis for Flores' First and Second Causes of Action in this case is the fact that a polygraph examiner had opined that Velez was untruthful concerning some of the information he provided the detectives, and the omission of that fact from the probable cause report, he may well be precluded from proceeding on those claims by virtue of the prior state court determinations.

But it is not clear from the amended complaint whether the failed polygraph is the sole basis for Flores' claim that the defendants illegally arrested and detained him. Flores alleges in his amended complaint that the defendants also conducted an investigation of the Orchard Street and National Avenue robberies that not only failed to corroborate Velez' statements, but uncovered information inconsistent with his statements. (Am. Compl. ¶ 8.) He further alleges that if the defendants had included this information in their probable cause report, no probable cause to hold Flores would have been found. (*Id.* ¶ 9.) These allegations were not a part of the state court proceedings. And because Flores' motion for post-conviction relief was denied without a hearing, there was no opportunity to develop the record concerning what the police might have known at the time they arrested Flores and sought to continue his detention.

If Flores' first two claims go beyond the omission of the polygraph results and are based on the defendants' failure to disclose additional facts that they had discovered before they arrested Flores or sought to continue his detention, then those claims would not be precluded by the prior state court proceedings. *See Whitley v. Seibel*, 676 F.2d 245, 249 (7th Cir. 1982) (holding that a probable cause finding made in a summary and cursory criminal preliminary hearing did not estop

---

[6]Though somewhat cryptic, this additional reason for rejecting Flores' claim seems to suggest that the fact that the information upon which a probable cause determination was based was provided by an individual who failed a polygraph examination does not vitiate the determination of probable cause and, therefore, need not be disclosed in any event. *See State v. Marshall*, 284 N.W.2d 592, 597-98 (Wis. 1979) (holding that otherwise inadmissible polygraph results do not vitiate otherwise proper showing of probable cause).

17

the defendant from later bringing a § 1983 claim challenging the "integrity, rather than the sufficiency, of the evidence" supporting probable cause). If, on the other hand, police had no more information than what was disclosed to the state court in connection with Flores' motion for post-conviction relief, then the determination of that issue in the state court proceedings may well preclude Flores from relitigating the issue of whether the polygraph results vitiated the probable cause determination upon which his arrest and continued detention were based. *Guenther v. Holmgreen*, 738 F.2d 879 (holding that plaintiff was collaterally estopped from relitigating the issue of whether there was probable cause for his arrest because that issue was decided against him at a state preliminary hearing in which he had the opportunity to fully and fairly litigate the issue). Because it is unclear from the amended complaint whether Flores is alleging the defendants were aware of exculpatory information other than the polygraph results, I am unable to determine whether the issue was fully litigated in the prior state court proceedings. It therefore follows that, at least for now, Flores can proceed on those claims as well. If further discovery discloses that the claims are based solely on the omitted polygraph results, defendants may renew their motion as to those claims.

## CONCLUSION

In sum, plaintiff's motion for leave to file an amended complaint will be granted. Plaintiff's civil rights claims against the defendants are not barred under the rule of *Heck v. Humphrey*. As to issue preclusion, three of plaintiff's claims are clearly not precluded since the issues underlying them were never addressed in the previous state court proceedings. While it is possible that the remaining two claims are based solely on an issue already decided by the state courts, the record is

18

not sufficiently clear to permit this court to determine whether issue preclusion applies. Accordingly, defendants' motion to dismiss will be denied as to these claims as well.

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to file an amended complaint is granted. The clerk shall detach the amended complaint from the motion and file it forthwith.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss is denied. Defendants shall file their answer or otherwise respond to the amended complaint within twenty days of this order. The clerk shall thereafter set this matter on the calendar for a Rule 16 telephone status conference. Fed. R. Civ. P. 16.

Dated this   14th   day of December, 2006.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
